**UNITED STATES of America,**
Plaintiff-Appellant,

v.

**COPELAND MILNES WOOL COMPANY**
and Seaboard Surety Company,
Defendants-Appellees.

**No. 11847.**

United States Court of Appeals
Seventh Circuit.
April 10, 1957.

661

Melvin Richter, Robert S. Green, Attys., Department of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., George Cochran Doub, Asst. Atty. Gen., for appellant.

Bernard H. Sokol and William Jaffe, Chicago, Ill., for appellees.

Before DUFFY, Chief Judge, and MAJOR and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiff sued to recover damages for the alleged failure of defendant Copeland Milnes Wool Company [1] to carry out the terms of its agency contracts with the Commodity Credit Corporation,[2] in omitting to collect payment for the sale of government wool at the time of delivery. The district court, sitting without a jury, rendered judgment for defendants. Plaintiff appeals.

The facts now set forth were stipulated.

On September 2, 1947, and on January 3, 1949, Commodity, a wholly owned agency of the United States, and Copeland entered into contracts known as "Wool Handler's Agreement(s) (Pulled Wool)".[3]

These standard form contracts provided that, in connection with the government's wool purchase program designed to maintain the support price for wool, Copeland was to buy and sell wool for Commodity on a commission basis. The

contracts contained the following pertinent provisions:

"1. General Obligation of Handler. The Handler [Copeland] * * * (d) shall be responsible for the collection of, and remittance to Commodity of, all sales proceeds and other amounts due Commodity.

* * * * *

"14. General. The Handler shall, as rapidly as possible, sell in the usual channels of trade for the account of Commodity wool purchased by Commodity hereunder.

"(a) Sales Price. Unless otherwise specifically directed or authorized by Commodity in writing, all such sales shall be made for cash, without discount, and at the applicable price under the selling price schedule prescribed by Commodity in effect at the time of sale, delivery of the wool to be made at the warehouse in which such wool is stored at the time of sale. All sales shall be confirmed in writing, and the date of the written confirmation shall be considered to be the time of sale. In the case of wool stored in warehouses located outside of the Boston, Massachusetts, storage area, a freight allowance may be allowed the purchaser, consisting of the amount deducted for freight under paragraph (9) (b) hereof, less any amount paid or payable to the Handler hereunder as reimbursement for freight paid with respect to such wool.

* * * * *

"(c) Remittance of Proceeds of Sales. The Handler shall immediately remit all sales proceeds * * * directly to Commodity or to the Bank." [4]

1. Hereinafter sometimes referred to as "Copeland".

2. Hereinafter sometimes referred to as "Commodity".

3. A faithful performance bond was given by Copeland with defendant Seaboard Surety Company as surety.

4. The same contract had provisions applicable when Copeland acted in the *pur-*

*chase* of wool for Commodity, including the following:

"10. Payment of Purchase Price to Pullery. The Handler shall, within thirty days after the appraisal of wool delivered to the Handler hereunder, or, in the case of a reappraisal, within thirty days after such reappraisal, pay to the pullery the purchase price of such wool * * *".

On September 20, 1949, Commodity issued an instruction to all wool handlers containing the following provisions:

"I Purpose

"This instruction sets forth conditions which must be adhered to by Handlers in the sale of wool under the CCC Wool Purchase Program.

\* \* \* \* \*

"VII Delivery of Wool and Final Settlement

"When sales of CCC [Commodity] wool are made, it must be clearly understood by the purchaser that remittance must be made immediately upon delivery of the wool but, in any event, within 30 days after the effective date of sale.

"A. Preliminary Settlement on Pro Forma Invoice. If it is not possible for the purchaser to take delivery of the wool and remit to the Handler the sales proceeds on a final basis within 30 days after the date of mailing of the sales confirmation to the Washington Office, remittance must be made within the 30-day period, on the basis of pro forma invoice, which the Handler is required to render. \* \* \*"

On October 4, 1949 Copeland sold to William T. Darden, Inc. for the account of Commodity two lots of wool, at a sales price of $7,290.86. Invoice to the purchaser was issued on November 4, 1949. Copeland permitted payment within 30 days after delivery rather than requiring payment to be made upon delivery. It was unable to collect payment, and William T. Darden, Inc., was subsequently adjudged bankrupt. This action followed. The complaint alleged that the handler, as agent for Commodity, was liable for damages resulting from its failure to comply with the explicit direction of the contracts that "all such sales shall be made for cash \* \* \*".

After trial, the district court made findings of fact, including the following:

"6. Prior to the instant sales and thereafter defendant [Copeland] as a wool handler under the contracts handled between 1500 and 2000 transactions for Commodity Credit Corporation similar to the instant sales and in all cases confirmations of the sales and copies of the invoices were sent to the plaintiff. None of the transactions were paid for by the purchasers on the date of sale or delivery. Defendant also purchased so-called CCC wool from time to time from other wool handlers and were [sic] never required to make payment at time of sale or delivery. It was the custom of the trade that all CCC wool sales invoices 'net cash' were considered on a 30-day basis. Billings were either on a 'pro-forma' basis where the actual weights at time of sale were not determined and on 'outweight' basis where the wool was weighed and the quantity determined.

"7. Remittances to Commodity Credit Corporation were made by defendant on all other transactions by endorsement and delivery to the Harris Trust & Savings Bank, depositary of Commodity Credit Corporation, of the check received by defendant from the purchaser. In no case were the proceeds of any sales deposited to defendant's own account or such funds otherwise comingled with its own funds. After remittances were thus made, defendant received payment of its commissions from the CCC depositary.

"8. From time to time auditors of the Commodity Credit Corporation audited defendant's books. At no time was defendant directed or requested by said auditors or any other person on behalf of the Commodity Credit Corporation to change the method of handling sales of the CCC wool or the manner of remittance.

"9. Commodity Credit Corporation was at all times informed and had knowledge of the manner in which all transactions were handled by the defendant in pursuance of the wool handlers agreements \* \* \*."

These findings are based upon uncontroverted evidence.

1. Plaintiff argues that the express terms of the contracts between Copeland and Commodity flatly required that all sales of wool by the handlers be made for cash and that cash sales are interpreted in the law merchant as contemplating no credit whatever.

The express terms of the contracts under the title of "Sales Price" provide that the sales shall be made for *cash, without discount,* and at the applicable price under the selling price schedule prescribed by Commodity. These provisions have to do with the fixing of the price at which a sale is to be made and are meant to prevent the giving of discounts. They have no application to the question of whether payment is to be collected upon delivery of the wool to the purchaser. The contracts are silent upon the latter point. In those circumstances, the district court had a right to consider the evidence of custom and usage common to the entire wool trade, which it did. This evidence showed that 30-day invoicing was customary in that trade. In complying with that custom, Copeland was complying with its contracts with Commodity.

2. However, Commodity argues that a considerable time after the contract had been in effect, it "issued an instruction" to all wool handlers. It appears that that instruction was a unilateral effort on the part of Commodity to set "forth conditions which must be adhered to by handlers in the sale of wool" under its wool purchase program. It announced that "it must be clearly understood by the purchaser that remittances must be made immediately upon delivery of wool, but, in any event within 30 days after the effective date of sale."

However, we are interested in the intent of the parties as expressed in the contracts. We are not interested in an instruction issued by Commodity, which counsel for plaintiff now argue negated "any inference that the parties mutually intended their obligations to be governed by local business usage."

3. Counsel for plaintiff characterized this "instruction" alternately as an "interpretation of the contracts" and as a "variance of their terms of payment." To speak of it as an interpretation is to suggest that the contracts are ambiguous. We believe that they are ambiguous. But Commodity's interpretation thereof, made after the contracts had been operating for a considerable length of time, is not binding upon Copeland, the other party to the contracts. Moreover, the contracts being ambiguous, their true meaning may be ascertained, not merely by a reading thereof, but also by evidence of usage of the trade and the acts of the parties in performance of the contracts prior to the date of the issuance of Commodity's "instruction". The record is clear, and the district court found, that both of these sources of interpretation of the contracts support Copeland's contention that payment in full at the time of delivery of the wool was not required.

4. Plaintiff also argues that, under settled rules of agency law, directions of the principal prescribing the manner of performing a contract are completely binding upon its agent. Whether or not a failure by Copeland to comply with Commodity's "instruction" would have been grounds for Commodity's termination of its relationship with Copeland it is not necessary for us to decide, inasmuch as no such termination was attempted. The total effect of plaintiff's argument on this point is that Commodity had a right, without the concurrence of Copeland, to alter the terms of the existing contracts. This we hold Commodity had no right to do.

5. Plaintiff also argues that there is no basis for holding that Commodity "had waived this requirement of payment in full at the time of the delivery of the wool". Neither in this court nor the district court did Copeland set up waiver as a defense. In this court it expressly disclaims any such defense.

Therefore waiver is not involved in this appeal.

The findings of fact by the district court are supported by substantial evidence and are not clearly erroneous. That court correctly applied the law to the facts and entered judgment for defendants. For the reasons hereinbefore set forth that judgment is affirmed.

Judgment affirmed.